The CITY OF NEW YORK et al., Plaintiffs,

v.

DARLING–DELAWARE et al., Defendants.

LIEBERMAN'S KOSHER MEATS, INC., on behalf of itself and all others similarly situated, Plaintiffs,

v.

DARLING–DELAWARE et al., Defendants.

Nos. 71 Civ. 80 and 71 Civ. 89.

United States District Court, S. D. New York.

Nov. 16, 1977.

Dickstein, Shapiro & Morin by Sidney Dickstein, A. J. Galligan, R. J. Higgins, Washington, D.C., for plaintiffs.

Elder & Walsky by Mark J. Elder, New York City, for objectors.

## MEMORANDUM

STEWART, District Judge:

The fee application presently before this Court is the culmination of 7 years of difficult antitrust litigation, resulting in a settlement of approximately 5.1 million dollars. Unlike many such applications where the Court first becomes familiar with the case at the time of the settlement, these parties have been before the Court on numerous occasions over the past several years concerning difficult problems in the litigation. Thus the Court feels particularly able to assess the performance of counsel in this case.

A joint fee application has been submitted on behalf of the following firms:

Dickstein, Shapiro & Morin ["the Dickstein firm" or "DS&M"]; Michael F. Dennis; Kohn, Savett, Marion and Graf, P.C. ["the Kohn firm"]; Milberg, Weiss, Bershad & Specthrie; and Fortes, Eiger, Epstein & Skirnick. They have jointly applied for attorneys' fees in the amount of $1,650,000, plus additional amounts for disbursements and accounting costs. On October 21, 1977, a hearing was held on the joint application. At the hearing Gemco Boneless Beef Corp. ["Gemco"][1] appeared to object to the application. The Court has carefully considered Gemco's objections, which were fully discussed at the hearing.

In this, as in all fee applications, the Court must start with ". . . a calculation of the attorney's services in terms of the time he has expended on the case." *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 470 (2d Cir. 1972) [*"Grinnell I"*]; *City of Detroit v. Grinnell Corporation*, 560 F.2d 1093 (2d Cir. 1977) [*"Grinnell II"*]; *Lindy Brothers Builders Inc. of Phila. v. American Radiator & Standard Sanitary Corp., et al.*, 487 F.2d 161 (3d Cir. 1973) [*"Lindy I"*] Gemco made several general allegations in its objections, such as that the attorneys wasted time and that their work was ineffective. However, when given an opportunity at the hearing to support these allegations, Gemco was totally unable to do so. The Court has reviewed the affidavits and supporting information submitted with the fee application, has drawn on its own knowledge of the problems encountered in the case, and finds that the number of hours spent by the attorneys are appropriate and amply supported.

The fee application submitted by counsel multiplied the hours of each attorney by their present hourly rate. Since many of the hours listed were accrued several years ago, when attorneys' billing rates were lower than they are today, a question arose concerning whether the Court should apply these present rates to all hours, or whether it should apply historic rates to the hours spent in prior years. At the hearing all counsel submitted a schedule of their hours at contemporaneous (historic) hourly rates. The Court, however, feels that in this case it is appropriate to use present rather than historic rates. The attorneys in this case have waited 7 years to receive any compensation for their services. Where the attorneys have waited so long for any compensation,[2] it seems that a calculation at present rates is appropriate to compensate for loss of interest and inflation. In fact, if we used historic rates and added to them compensation for interest and inflation, the Court would add far more than the 5–11% difference[3] between a calculation of the hours at the two different rates.

With one exception,[4] the Court is accepting as reasonable the hourly rates requested by counsel (see Schedules A, B, and C attached to Dickstein's affidavit). Thus the attorneys' fees, if computed on a straight hourly basis, would amount to $717,860.00.

Once the Court has evaluated the attorneys' services in terms of time, it then must consider the qualitative factors listed in *Grinnell I; Grinnell II; Lindy I;* and

1. A member of plaintiff class.

2. The center of gravity or median of the hours would be approximately 4 years ago.

3. The difference between a calculation at historic and present rates of the Kohn firm, the Fortes firm and the Milberg firm is less than 5%, Mr. Dennis' is less than 10%, and DS&M's is 11%.

4. Harold Kohn's regular hourly rate is $250. He has charged 184 hours to this case, all at his regular rate. Of this time, 85 hours were spent in settlement negotiations. Sidney Dickstein, whose regular rate is $150, charged 471 hours.

Of this, 81 hours (almost the same as Kohn) were spent in settlement negotiations. Most of the balance was spent in factual and legal investigations, discovery, court appearances and related matters. Kohn has a well-deserved reputation as a highly skilled practitioner, especially in the antitrust field. He has taken a leading role in a number of class actions in which substantial settlements were obtained for his clients. Dickstein's firm has also been notably successful in the same area and enjoys a similar reputation. Under these circumstances we think it appropriate to reduce Kohn's rate for this case to $175.

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir. 1976) (*en banc*), [*"Lindy II"*], in order to determine whether the compensation to be awarded should be other than the lodestar figure.

■ In this case, which presented many unusual and complicated issues, we feel that an increase in the amount calculated on a straight hourly basis is more than warranted. While there was a prior governmental indictment, it ended almost immediately with pleas of *nolo contendere*. Thus, unlike *Grinnell*, there was no trial, and little evidence was adduced which plaintiffs could use. Other factors distinguish this case from *Grinnell II*. The attorneys in this case labored alone for 7 years. There were no prior similar private actions, and discovery was conducted only by these counsel. In fact, in a similar action filed in California, the defendants successfully prevented the certification of a class.[5] It is the extensive work which led to the declaration of a class in this case, which has most influenced the Court in its determination to award a multiple, for the Court feels that these class actions were "furthered exclusively by the ingenuity and perseverance"[6] of counsel.

A motion for class action certification originally was filed in 1971, and Judge Palmieri initially granted the motion in August, 1971. Defendants moved for reconsideration, and Judge Palmieri ultimately decided to hold the class action question in abeyance pending further development of the facts relating to liability. Over 2 years of extensive discovery ensued, and in 1974 plaintiffs renewed the motion before Judge Conner. Extensive briefs were submitted, and while the Court apparently felt that the requisite showing of commonality as to liability had been demonstrated, it deferred reaching a decision on the motion until it could be shown that there was a manageable manner in which impact and damages could be established on a common basis. Plaintiffs then collected and analyzed extensive data (work which would normally not be done until the damage stage of proceedings) which finally resulted, in July, 1975, in the presentation to this Court of an extensive methodological study. After additional briefs were filed, this Court, in a memorandum opinion, granted plaintiffs' motion for class certification, almost 5 years after the motion was originally filed. The complexity of the issues, proof, and presentation concerning this motion, we believe warrants a multiple of the base rate figure.

The fact that the class status was in doubt for 5 years has bearing on another major factor that has influenced the Court to award a multiple in this case. This factor is the "risk of litigation". The Court of Appeals described this factor in *Grinnell I* as follows:

. . . the fact [is] that, despite the most vigorous and competent of efforts, success is never guaranteed. The greater the probability of success, of either ultimate victory on the merits or of settlement, the less this consideration should serve to amplify the basic hourly fee. The tangible factors which comprise the "risk of litigation" might be determined by asking the following questions: has a relevant government action been instituted or perhaps, even successfully concluded against the defendant; have related civil actions already been instituted by others; and are the issues novel and complex . . . Thus determined, the litigation risk factor might well be translated into mathematical terms. *Grinnell I*, 495 F.2d at 471.

As the Court has already discussed, the three factors listed in *Grinnell I* weigh heavily towards granting the plaintiffs' counsel a "risk" multiple in this case. However, there are other risk factors which the Court has considered: the doubtful class status for 5 years; the fact that plaintiffs were in suspense for 6 years, since a settlement was not reached until August, 1976, on the eve of trial; the fact that approximately 90% of counsel's time was spent

---

**5.** Transcript, October 21 hearing, p. 70.

**6.** *Grinnell II*, 560 F.2d at 1100.

pre-settlement; and the fact that due to the extensive proof required by the Court on both liability and damages, it is almost as if counsel undertook the burden of fully preparing for a "long and complicated trial". *Grinnell II*, 560 F.2d at 1101. Thus the Court finds that a risk factor multiple is particularly appropriate in this case.

■ However, the Court is mindful of the fact that this multiple should not be applied indiscriminately to all aspects of the case and to all counsel. The Court is not awarding any multiple to the hours of Milberg and Weiss or to the hours of Fortes, Eiger, Epstein and Skirnick,[7] since they were not involved in litigating the novel and complex aspects of the case and since they had little involvement after the complaints were filed until shortly before the settlements were reached. The firm of Dickstein, Shapiro & Morin and Michael Dennis, on the other hand, were the laboring oar in this case, and litigated with enormous skill and determination. The Court is doubling the base rate figure for all of their hours spent prior to approval of the settlement. While Kohn, Savett, Marion & Graf were not as extensively involved in litigating the difficult class issues, their risk factor was still quite high, and Mr. Kohn's particular expertise during the negotiations warrant substantial multiples. Thus the Court is awarding 60% multiple to the Kohn firm's pre-settlement hours, and is doubling their hours spent on the settlement negotiations. The Court will not award any multiple to hours spent on "claims administration" since there is no longer any risk involved at this stage in the proceedings. *Grinnell II*, 560 F.2d at 1099.

Thus a calculation of these multiples would leave the Court with the following award of counsel fees:

| | |
|---|---|
| Dickstein, Shapiro & Morin . . . . . . | $ 956,112.50 |
| Michael Dennis . . . . . . . . . . . . . . . | $ 169,950.00 |
| Kohn, Savett, Marion & Graf . . . . | $ 82,370.75 |
| Fortes, Eiger, Epstein & Skirnick . . . . . . . . . . . . . . . . . . . | $ 36,168.75 |
| Milberg & Weiss . . . . . . . . . . . . . . | $ 32,625.00 |
| Total | $1,277,227.00 |

■ Plaintiffs' counsel have also applied for reimbursement of expenses and disbursements in the amount of $161,938.72. A substantial portion [8] of this amount is for paralegal expenses. Gemco objects to the award of any expenses for paralegals, claiming that ". . . use of secretaries and paralegals are plain and ordinary office expenses and reimbursement for the expenses of running a law office comes from the fees earned by the attorneys, not from fees earned by paralegals . . . attributable [sic] overhead of paralegals as a billable expense is really pushing a fee application far beyond the limit . . .," Elder Affidavit, ¶ 8. We disagree. Since the use of paralegals has proliferated in the last several years, their use in cases of this nature has been responsible for large savings. It is a practice to be encouraged, and law firms should be reimbursed at least for their expenses (and in appropriate cases perhaps at a greater rate). *Grinnell I*, 495 F.2d at 473; *Barnett v. Pritzker*, 73 F.R.D. 430, 432 (S.D.N.Y.1977). Counsel calculated paralegal expenses at $10.95 an hour and $10 an hour,[9] amounts the Court feels are more than reasonable. Gemco's other objections to the requested disbursements, such as the $.10 a page charge for duplicating, are without merit.

Accordingly, the Court grants reimbursement for expenses and disbursements in the amount of $161,938.72.

■ The Court also approves reimbursement in the amount of $6,981.00 to Shareholders Communication Corporation for services in locating class members.[10] We

---

7. Fortes, Eiger, Epstein & Skirnick were not retained until after this Court certified the class.

8. $60,483.50.

9. Counsel arrived at these amounts by calculating the paralegals' salary, taxes, overhead, etc., i. e., their actual cost to the firm. The appli-

cant firms bill customers at higher rates than just reimbursement for costs. However, they applied to this Court only for reimbursement of actual expenses.

10. The Dickstein firm has already paid Shareholders Communication Corp. $4,036.50. Dickstein applied for reimbursement in his expense application.

also award the accounting firm of Laventhol & Horwath $65,000 for accounting services and $12,391.33 for its expenses.

 Mark J. Elder, counsel for Gemco, has submitted an application for fees for time spent in preparing his objections. The objector raised important points which deserved careful consideration and were fully debated at the hearing. While we cannot point to any specific monetary benefit which was created as a result of objector's points, he made a not insubstantial contribution to our consideration of the fee application. Accordingly, we find it appropriate in the exercise of our discretion in this case to award Elder & Walsky $1,800.00.[11] *Cf. Matter of New York, N.H. & H.R.R.*, 421 F.Supp. 249, 254 (D.Conn.1976); *Green v. Transitron Electronic Corp.*, 326 F.2d 492, 499 (1st Cir. 1964); *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1054 (2d Cir.), *cert. denied*, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973).

Fees and expenses in the amounts stated herein are approved.

Settle order on 5 days' notice.

---

11. Elder itemized 25.3 hours and requested $100 an hour. However, 7.3 of the hours were for time spent in 1976, on matters unrelated to the fee application.