**In the Matter of The CENTRAL RAILROAD COMPANY OF NEW JERSEY, Debtor.**

**No. B 67–401.**

United States District Court, D. New Jersey.

Oct. 5, 1979.

## OPINION

WHIPPLE, Senior District Judge.

Presently before the Court are six applications for final allowances in this railroad reorganization proceeding. Filed pursuant to the Bankruptcy Act § 77, sub. c(12), 11 U.S.C. § 205(c)(12), the applications are for services rendered over varying portions of the twelve year period during which the Central Railroad Company of New Jersey (hereinafter the "Debtor") has been in reorganization. On July 2, 1979 the Amended Plan of Reorganization was approved. *In the Matter of the Central Railroad Company of New Jersey,* 473 F.Supp. 225 (D.N.J. 1979). It was confirmed on August 15, 1979, with the consummation order signed September 14, 1979. On September 4, 1979 the United States Court of Appeals for the Third Circuit denied the Reading Railroad's motion for an expedited appeal and denied the request for summary reversal.[1]

Though these have been lengthy proceedings, when compared to other railroads who have faced similar financial problems, twelve years is not an inordinate amount of time. The duration does not reflect anything less than professional skills being utilized throughout. Not all of the proceedings for which compensation is sought occurred before this Court. While numerous actions have been taken in various places, this Court has been in the position to witness directly or indirectly all the services which have been performed.

Not all of the applications are for attorney's fees. The Indenture Trustee seeks reimbursement for accounting, engineering, and legal expenses. The Trustee of the Debtor seeks an allowance for the services he has performed. It is important to note that a major distinction will be made between those who have received interim allowances and those who have waited as much as ten years to be paid.

There are general criteria which can be applied to all six petitions and are not limited strictly to railroad reorganizations. In *In the Matter of Imperial 400,* 431 F.Supp. 155 (D.N.J.1977) this Court awarded final allowances in keeping with the following considerations:

> . . . the time expended (and the quality of the time records maintained), the benefits conferred upon the estate by the work performed, the degree of difficulty of that work, the results accomplished, the standing of the particular professional performing the work both within his professional community and as a professional skilled in the reorganization proceedings . . . .

431 F.Supp. at 160.[2]

■ More particularly "the petitioners [herein] bear the burden of proving that the services for which compensation is sought under § 77(c)(12) measurably benefited the estate" of the Debtor. *See In the Matter of New York, New Haven & Hartford R. Co.,* 421 F.Supp. 249 (D.Conn.1976) *aff'd* 567 F.2d 166 (2d Cir. 1977), and citations therein 421 F.Supp. at 253. The services must have advanced the course of reorganization and not impeded it. Moreover the general rule is that there must not be duplication or overlapping of services rendered by the trustee (his counsel) and by the other petitioners. *Id.,* 421 F.Supp. at 253.

■ All of these factors have been carefully weighed in studying the petitions

---

1. The Reading Railroad's appeal is presently before the Third Circuit. On behalf of the stockholders, the Reading objects to the Amended Plan as not sufficiently protecting their interests. *See In the Matter of the Central Railroad Company of New Jersey,* 473 F.Supp. 225 (D.N.J.1979) where these objections are discussed.

2. In *Imperial 400* this Court also enumerated the following traditional considerations:

1) Necessary hours spent;

2) Intricacy and novelty of legal questions and opposition encountered;

3) Customary fee charged by the individual and by the local professional for the services;

4) Economical spirit of the Bankruptcy Act;

5) Size of the Estate;

6) Success of the reorganization;

7) Professional standing and reputation of the party;

8) Benefit of services to the estate.

431 F.Supp. at 161.

and materials submitted in support thereof. Additionally in viewing the four applications for attorney's fees the Court has been guided by the applicable standards laid down in *Lindy Brothers of Philadelphia v. American Radiator,* 487 F.2d 161 (3d Cir. 1973) (hereinafter *Lindy I*) and *Lindy Brothers of Philadelphia v. American Radiator,* 540 F.2d 102 (3d Cir. 1976) (hereinafter *Lindy II*). Extensive discussion of those specific standards is unnecessary. The basic formula is the number of hours of service supported by accurate time records, multiplied by the rate per hour. The rate per hour is determined by looking to the normal amount charged while taking into account the reputation and status of the particular professional. The resulting figure is called the "lodestar." Adjustments can be made to the "lodestar" to reflect the quality of the methods utilized, the result in the case, and also the assumption of professional burdens. These burdens could include a particularly complex set of legal problems, any risks, and possible delays in payment. Though a specific formula is discussed in *Lindy I* and *Lindy II,* the Third Circuit noted it was unnecessary for a district court to:

> become enmeshed in a meticulous analysis of every detailed facet of the professional representation.

540 F.2d at 116.

The court thus enjoys a certain amount of discretion in ruling upon these petitions. Furthermore, one who seeks to establish an abuse of that discretion on appeal, "assumes a heavy burden." 540 F.2d at 115–116.

A hearing was held at which time there were no objections put forth to any of these petitions. However, this does not mean that all will be granted in full. As was stated in *Imperial 400, supra* :

> . . . different applicants will be compensated at different rates, i. e., a comparison of hourly rates reached by dividing the hours claimed into the total compensation, will show disparate results.

No uniform hourly rate can be applied because of the numerous factors that must be carefully considered. Moreover, in making these awards I have taken into account the specific time period during which the services were rendered by respective applicants, the hourly rates that were in effect during those time periods, the fact that many of the applicants have been waiting many years for compensation . . . contemporaneous with the rendering of the services, the aggregate amount that I deem to be the reasonable total compensation to be awarded in these proceedings and other intangible factors that only a presiding reorganization judge is in a position to evaluate.

431 F.Supp. at 161.

With all of these standards being applied each petition must be discussed separately.

## MANUFACTURERS HANOVER TRUST COMPANY INDENTURE TRUSTEE

The first application is that of the Manufacturers Hanover Trust Company, the Indenture Trustee of the Debtor's 3¼ General Mortgage Bonds. The Trust Company seeks reimbursement for expenses incurred in connection with the reorganization proceedings in the amount of $270,683.14. This total figure is the sum of various amounts actually paid to:

1) Touche, Ross & Company for accounting and financial-analytic services rendered from 1/22/71 through 12/25/72

$ 53,225.00

2) Coverdale & Colpitts for technical and transportation engineering services rendered from 6/1/71 through 1/31/73

$ 25,320.00

3) Kelley, Drye, Newhall, Maginnes & Warren (now known as Kelley, Drye & Warren) for legal services rendered between 3/67 and 3/69

$ 24,000.00

4) Pitney, Hardin & Kipp for legal services rendered from 3/69 through 12/31/78

| | |
|---|---|
| Services | $140,705.00 |
| Disbursements | $ 13,238.91 |

5) Miscellaneous printing and travel expenses from 3/22/67 through 11/31/78

$ 2,147.35

6) Pitney, Hardin & Kipp for legal services rendered from 12/1/79 through 6/1/79

Services $ 8,260.00 [3]
Disbursements $ 1,300.09

Added to these is an amount of $2,486.79 owing to the Kelley, Drye & Warren firm for legal services rendered.

Extensive supporting documents have been submitted by the Indenture Trustee. Having reviewed them, and because this allowance is reasonable and authorized by § 77(c)(12), 11 U.S.C. § 205(c)(12), I hereby find that Manufacturers Hanover Trust Company is entitled to reimbursement in the amount of $270,683.14.

■ Additionally the Indenture Trustee has applied for a final allowance for extraordinary services in the amount of $78,-981.50. It should be noted that the Trust Company has billed the estate $52,532.30 for normal services rendered March 22, 1967 through December 31, 1978. The Debtor has paid that amount in full. The Trust Company now maintains that it is entitled to compensation for the extraordinary services rendered in protecting the interests of the holders of the securities issued under the Mortgage. This fiduciary capacity has been termed a "watchdog" function by other courts. *In the Matter of New York, New Haven & Hartford R. Company, supra.* Because the services did go beyond what is termed normal, the Indenture Trustee is entitled to an additional allowance. However, in studying the valuation section of the supporting affidavit (at paragraph 12) the Court does not share the affiant and petitioner's view of the value of these services. In the appearing chart, the rate per hour for Trust Company personnel for the years 1967–1978 averaged nearly $50.00 per hour. Dividing this average into the total requested amount yields 1579.63 hours. The amount of hours is supported by time sheets and is reasonable, yet in view of the fact that the Indenture Trustee has been paid for normal services, the hours herein billed were largely spent several years ago, and because counsel for the Trust Company has petitioned separately for a final allowance, the Court believes that $25.00 is a reasonable average rate per hour for what were essentially tasks performed by a client whose counsel is being paid separately. Additionally, the value to the Debtor of the Indenture Trustee's extraordinary services is minimal when compared to the other applicants. Thus at $25.00 per hour, the total allowance to the Manufacturers Hanover Trust Company for extraordinary services will be $39,490.75.

## KELLEY, DRYE & WARREN

In June of 1969 the law firm of Kelley, Drye, Newhall, Maginnes & Warren petitioned for an allowance of $40,000.00, for legal services performed on behalf of the Indenture Trustee. As previously discussed the Indentured Trustee paid $24,000.00 of this bill, yet for over ten years Kelley, Drye & Warren (as the firm is now known) has awaited payment of the balance. In view of this fact no other discussion is necessary. Kelley, Drye & Warren is awarded $16,-000.00.

## PITNEY, HARDIN & KIPP

### Attorneys for the Indenture Trustee

■ This law firm has represented the Indenture Trustee since 1967. From July 19, 1967 until March 27, 1969 Pitney, Hardin & Kipp were local counsel, and thereafter have served as general counsel. As previously noted the firm has been paid over $140,000.00 by the Indenture Trustee. The petition for the final allowance outlines a total amount of hours until December 31, 1978 of 2,173.3 for partners' time and 2,835.3 for associate, clerk and para-legal time. The Court has reviewed the accompanying detailed time records and believes they accurately reflect the total hours of legal services.

---

3. *See* discussion of this figure when considering Pitney, Hardin & Kipp's separate application, *infra.*

The petitioner asserts that the past payments for the total hours reflect an aggregate of $40.00 per hour for partners' time and $20.00 per hour for associates' time. The additional amount which petitioner seeks for services until December 31, 1978 is $189,295.00. Were this to be granted, the aggregate hourly rates would be $92.00 per hour for partners' time and $46.00 per hour for associates' time.

In their supporting brief petitioner cites *City of New York v. Darling-Delaware,* 440 F.Supp. 1132 (S.D.N.Y.1977) where current hourly rates were used to determine attorney's fees because there the attorneys had waited over seven years to receive any compensation. Since Pitney, Hardin & Kipp have received interim allowances throughout, they are not in the same situation, and seek what is termed a middle ground allowance. The Court agrees, however a lesser hourly rate constitutes the middle ground. In addition to the considerations outlined in the beginning of this opinion, several particular factors necessitate a decrease in the hourly rates to be multiplied times the total hours. First, the total for associate time includes work by clerks and para-legals. Secondly, the length of time in which the services have been performed includes twelve years. While the aggregate hourly amounts may be appropriate for services rendered in the last two years, these figures are well above the customary rates for the first ten years. Third, the bulk of the hours occur in the 1971–1972 time period. After careful consideration to all of these factors the aggregate amount for these legal services will be $75.00 for partners' time (an increase of $35.00 per hour of what has been paid) and $30.00 per hour for associates' and others' time (an increase of $10.00 per hour of what has been paid). When multiplied times the total hours and deductions made for the interim allowances, Pitney, Hardin & Kipp's petition for past legal services is granted in the sum of $104,418.50.

Additionally Pitney, Hardin & Kipp seeks a final allowance for services performed since January 1, 1979 and for future estimated services in the total amount of $33,000.00. The Indenture Trustee has been reimbursed $8,260.00 for payment to Pitney, Hardin & Kipp for services during that same period. A review of the time sheets submitted shows that much of that time was spent in preparing the allowance petition for the Indenture Trustee. While the Trust Company is entitled to reimbursement, under *Lindy II, supra,* 540 F.2d at 109–11, a law firm is not entitled to payment for preparation of allowance petitions. This is because the preparation of fee applications does not aid the estate. Therefore the $8,260.00 must be deducted from any allowances for services in 1979 by counsel for the Indenture Trustee.

From January 1, 1979 until present the basic functions being performed were negotiations by the parties on the Amended Plan of Reorganization. Time sheets have not been submitted for the hours spent during this period, nor has the Court witnessed any particular benefit to the Debtor by counsel for the Indenture Trustee more than a few Court appearances and presumed attendance at negotiations. Furthermore, though an appeal is pending, the Third Circuit has recently denied the motion for summary reversal. It is unlikely that this petitioner will accumulate significant future hours in this proceeding. Therefore as reasonable final allowances for 1979, the Court awards $2,000.00.

Attorneys for the Indenture Trustee are hereby awarded $106,418.50 as a complete final allowance.

JACOB GOODSTEIN, ATTORNEY for 3¼% Bondholders Protective Committee

Jacob Goodstein has submitted a petition for legal services rendered since 1968. He has received no interim allowances. He has submitted time sheets reflecting 1988 hours of his time, and 533 hours time by two of his partners and $2,877.18 disbursements. Additionally Mr. Goodstein represents that he has spent 500 hours of time not reflected in his time sheets. The rates per hour he requests are $125.00 per hour for his time and $75.00 for that of his two partners.

It is significant that all parties to this proceeding have agreed that Mr. Goodstein's efforts have been beneficial to the estate throughout the various proceedings and negotiations. Because the Court agrees and because he has not received any compensation over the years, and his application being reasonable, he is awarded the $288,475.00 plus $2,877.18 disbursements and $1,250.00 for services rendered since the filing of his petition, for a total final allowance of $292,602.18.

### R.D. TIMPANY, TRUSTEE OF THE CNJ

■ The next application for consideration is that of the Trustee having served in that post from January 18, 1971 until the present. Mr. Timpany also performed the functions of chief operating officer of the Debtor from 1973 until the conveyance to ConRail in April of 1976. He has received an annual salary and participated in various pension and insurance plans. The Court notes the difficult job he faced and the outstanding job he has done over the years of his involvement. He has saved the estate enormous amounts of money and taken an active part in the negotiation of the recently consummated Amended Plan. Additionally he has been most helpful to the Court throughout, and perhaps more than any other individual involved, he has brought the various parties together while strictly representing the interests of the Debtor.

Mr. Timpany's petition is in two parts. First, he asks to be compensated at an annual salary of $100,000.00 in his capacity as Trustee beginning January 28, 1979 until the conclusion of his activities as Trustee. The Court grants this reasonable request. Secondly, the Trustee seeks a final allowance of $200,000.00 for the services he has performed since he began in 1971. While he has received an annual salary, he points out in his position that during the years he has served the CNJ, he turned down firm offers for other positions at a much larger annual salary. An ICC order of March 14, 1972 describes the distinction between interim and final allowances. Petitioner has

represented that he relied upon this distinction in seeking less interim compensation with the expectation that he would receive a final allowance. Because of the massive job he faced and because of the generally favorable results he has achieved, the Court views his request as reasonable and hereby grants his petition for a $200,000.00 final allowance.

### STANLEY WEISS, ATTORNEY FOR THE TRUSTEE

The final petition has been submitted by counsel for the Trustee of the Debtor. Mr. Weiss was appointed on February 26, 1971 and has served in that capacity until the present. In addition to his many appearances in this Court, he has taken an active role in the other proceedings involving the Debtor. He and his firm have received interim allowances totaling $1,501,543.00. While these are substantial interim payments, he has completed the largest share of the legal services rendered in this complex reorganization proceeding. He has not received any compensation for legal services performed between December 1, 1978 and September 14, 1979, the latter being the consummation date of the Amended Plan of Reorganization.

On September 28, 1979 Mr. Weiss submitted a Supplement to his petition for final allowances. This document provides supporting data for the uncompensated hours and requests a reimbursement of $40,736.40 for disbursements. In seeking a final allowance counsel for the Trustee requests additional compensation for the earlier years and payment for his most recent legal services on behalf of the Debtor.

After careful consideration of all submitted papers, the previously outlined applicable standards, and mindful of the central role petitioner has performed in these proceedings, the Court hereby grants a final allowance of $325,000.00, plus the $40,736.40 in disbursements to counsel for the Trustee.

Counsel for the Trustee shall submit forthwith an order incorporating all final allowances herein awarded.