William J. HOUGHTON, et al., Plaintiffs,

v.

SIPCO, INC. f/k/a Swift Independent Packing Company, et al., Defendants.

Civ. No. 4–89–CV–70533.

United States District Court, S.D. Iowa, C.D.

July 8, 1993.

## ORDER ADOPTING REPORT AND RECOMMENDATION

VIETOR, District Judge.

On December 4, 1992, plaintiffs' application for attorneys' fees and disbursements was referred to Hon. Mark W. Bennett, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). On June 2, 1993, Magistrate Judge Mark W. Bennett filed a report and recommendation in which he recommends that plaintiffs' counsel be awarded attorney fees in the amount of $259,399.80 plus reasonable costs and expenses in the amount of $19,545.61, for a total amount of $278,945.41. The parties were granted ten days within which to file objections to the report and recommendation. Defendants have filed objections to the report and recommendation.

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

28 U.S.C. § 636(b)(1).

I have made the required de novo review of the record.

I accept the report and recommendation of the Magistrate Judge. Judgment for the fees in the amount recommended will be entered.

## REPORT AND RECOMMENDATION

BENNETT, United States Magistrate Judge.

"To the old adage that death and taxes share a certain inevitable character, federal judges may be excused for adding attorneys' fees cases." [1]

J. Russell Hixson and Terrence D. Brown of the Gamble and Davis law firm, Des Moines, IA, for plaintiffs.

William H. Bruckner of Bruckner & Sykes, Houston, TX, for defendants.

## I. *TABLE OF CONTENTS*

| | | |
|---|---|---|
| I. | TABLE OF CONTENTS | 633 |
| II. | INTRODUCTION AND BACKGROUND | 634 |
| III. | THE CONTENTION OF THE PARTIES | 636 |
| | A. The Plaintiffs' Contentions | 636 |
| | B. The Defendants' Contentions | 637 |
| IV. | FINDINGS OF FACT | 638 |
| V. | ANALYSIS | 639 |

1. *Kennedy v. Whitehurst*, 690 F.2d 951, 952 (D.C.Cir.1982).

A. Overview of the Applicable Law Relating to ADEA and ERISA Attorney Fees ............ 639
B. Determination of Plaintiffs' Lodestar Request ............ 640
 1. Determining Plaintiffs' Reasonable Hourly Rate ............ 640
 a. The Application of Current Rather Than Historical Rates ............ 640
 b. The Determination of Plaintiffs' Reasonable Hourly Rates Utilizing the Market Rate Approach ............ 641
 2. The Determination of Plaintiffs' Counsel's Reasonable Hours Expended ............ 643
 a. Plaintiffs' Counsel's Record Keeping ............ 643
 b. Total Number of Hours Reasonably Expended by Plaintiffs' Counsel ............ 645
 3. Computation of Plaintiffs' Counsel's Lodestar ............ 648
C. Whether Plaintiffs' Lodestar Should Be Further Reduced for Time Spent Before the Equal Employment Opportunity Commission and the Iowa Civil Rights Commission ............ 649
D. Plaintiffs' Contested Claim for Expenses ............ 650
VI. CONCLUSION ............ 651

## II. *INTRODUCTION AND BACKGROUND*

This is an attorney fees dispute arising from a jury verdict on January 31, 1992, in favor of some of the Plaintiffs on their claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621–634 and for some of the Plaintiffs on some of their claims and for all of the Plaintiffs on one of their claims under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101 *et seq.* The procedural background of this litigation is adequately summarized as follows:

> On August 10, 1989, Plaintiffs filed suit against Sipco and Monfort under a number of theories, including the Employee Retirement Security Act (ERISA), the Age Discrimination in Employment Act (ADEA), Iowa Code Ann. secs. 601A *et seq.* (the Iowa age act), and numerous common law claims. Before trial, Plaintiffs dismissed their common law claims and proceeded under ERISA, the ADEA, and the Iowa age act. The case was tried to a jury, which awarded back pay and emotional distress damages to five of eight Plaintiffs under the age discrimination claims. Also under the age discrimination claims, the jury entered willfulness findings concerning the same five Plaintiffs. Under the ERISA claims, the jury found that six or seven Plaintiffs were entitled to severance pay. It also found three Plaintiffs were entitled to pensioner medical benefits under breach of contract and promissory estoppel theories, and all Plaintiffs were entitled to pensioner medical benefits under a breach of fiduciary duty theory. A post trial motion filed by Plaintiffs and granted by this Court allowed back pay to an additional two Plaintiffs. This Court also declared the ADEA violations by the Defendants to be willful[.]

Brief in Support of Defendants' Resistance to Plaintiffs' Application for Attorneys' Fees, pp. 1–2.

On December 4, 1992, the Honorable Harold D. Vietor entered an order referring Plaintiffs' application for attorneys' fees and disbursements to the undersigned. The order stated, *inter alia:*

> Pursuant to 28 U.S.C. § 636(b)(1)(B), IT IS ORDERED that plaintiffs' application for attorneys' fees and disbursements is hereby referred to the Honorable Mark W. Bennett, United States Magistrate Judge for the Southern District of Iowa, to conduct a hearing if necessary and for submission of a report and recommendation regarding disposition of the motion to the undersigned.

Order of Reference and Other Orders, Dec. 4, 1992.

The question of Plaintiffs' entitlement to and the reasonableness of their requested

attorneys' fees has been extensively briefed by both parties. A hearing was held on April 28, 1993. J. Russell Hixson and Terrence D. Brown of the Des Moines law firm of Gamble and Davis appeared on behalf of the Plaintiffs. William H. Bruckner of Bruckner & Sykes, Houston, Texas, appeared on behalf of the Defendants. The Defendants called J. Russell Hixson as a witness. Additionally, each of Plaintiffs' three primary counsel have filed affidavits. This matter is now fully submitted.

Plaintiffs seek reasonable attorney fees pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. The ADEA, unlike Title VII, 42 U.S.C. § 2000e–5(k), does not contain its own statutory attorney fee-shifting provision. Rather, in § 626(b) of the ADEA, Congress explicitly authorized private sector plaintiffs to recover attorney fees by incorporating § 216(b) of the Fair Labor Standards Act which provides in relevant part: "the court ... shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 626(b) and § 216(b);[2] *see e.g., Richardson v. Alaska Airlines, Inc.,* 750 F.2d 763, 765 (9th Cir.1984) ("The ADEA does not expressly provide for the award of attorney's fees. Instead, the ADEA incorporates the remedial provisions of the Fair Labor Standards Act. ..."); *Verbraeken v. Westinghouse Elec.*

*Corp.,* 881 F.2d 1041, 1051 (11th Cir.1989) ("A prevailing plaintiff in an ADEA action is entitled to award of reasonable attorney fees pursuant to 29 U.S.C. § 626(b) that incorporates 29 U.S.C. § 216(b) by reference.") (citations omitted), *cert. dismissed,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990). Thus, the language of the ADEA differs significantly from Title VII and 42 U.S.C. § 1988 which grants attorney fees to successful parties in civil rights litigation. In each of those statutes, the trial court is granted discretion to award attorney fees "to prevailing parties as part of costs." Under the Fair Labor Standards Act, and thus the ADEA, attorney fees *"shall"* be awarded to the successful *"plaintiff."*[3] Notwithstanding the differences in the language between the ADEA and other civil rights fee-shifting statutes, federal courts have generally recognized that "age discrimination cases commonly cite section 1988 cases on fee questions. ..." *Heiar v. Crawford County, Wis.,* 746 F.2d 1190, 1203 (7th Cir.1984) (citations omitted), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985); *Drez v. E.R. Squibb & Sons, Inc.,* 674 F.Supp. 1432, 1445 (D.Kan.1987).

Plaintiffs also seek attorney fees under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101 *et seq.* Under ERISA, there is a specific statutory grant of authority to award attorney fees, 29 U.S.C. § 1132(g).[4]

---

**2.** Section 626 of the ADEA is also known as the "Age Discrimination Claims Assistance Act of 1988." P.Law No. 100–283, Apr. 7, 1988, 108 Stat. 78 and the Age Discrimination Claims Assistance Amendments of 1990, P.Law No. 101–504 § 1, Nov. 3, 1990, 104 Stat. 1298.

**3.** One commentator has observed that "[t]he language of the ADEA differs significantly from § 70(k) of Title VII and 42 U.S.C. § 1988 which grants attorney's fees to successful parties in civil rights litigation." Mack A. Player, *Employment Discrimination Law* 562 (1988). Player notes two important differences between ADEA attorney fees and other civil rights attorney fees based on prevailing party status. First, defendants will have a more difficult burden in recovering attorney fees from an unsuccessful plaintiff under the ADEA. Secondly, the commentator suggests that the difference in statutory language of the ADEA attorney fees could produce a different result under Federal Rule of Civil Procedure 68 and *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87

L.Ed.2d 1 (1985), which held that recovery of less than the amount of an offer of settlement made pursuant to Rule 68 precluded an award of attorney fees for the time spent litigating the case after the Rule 68 settlement offer. Mack A. Player, *Employment Discrimination Law* 562–63 (1988). Neither of these issues arise in this litigation.

**4.** 29 U.S.C. § 1132(g)(1) states:

"In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(2) states, in relevant part: "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment

Section III of this Report and Recommendation addresses the contentions of the parties concerning Plaintiffs' application for attorney fees. Section IV contains the limited findings of fact relevant to Plaintiffs' application for attorney fees. Section V analyzes Plaintiffs' "lodestar" request, addresses Defendants' contentions seeking to limit or reduce Plaintiffs' lodestar request, and sets forth the methodology and calculation that the court utilizes in determining an award of reasonable attorney fees to the Plaintiffs.

## III. *THE CONTENTIONS OF THE PARTIES*

### A. *The Plaintiffs' Contentions*

Plaintiffs are requesting total fees and expenses as follows:

| Dates | Fees | Expenses | Total |
|---|---|---|---|
| 04/18/88–07/31/92 | $304,427.00 | $18,217.46 | $322,644.46 |
| 08/01/92–12/31/92 | 27,041.00 | 11,004.15 | 38,045.15 |
| TOTALS | $331,468.00 | $29,221.61 | $360,689.61 |

This fee request is based upon the following requested hourly rates for various members of the Gamble & Davis law firm which represented the Plaintiffs throughout this action, including attorneys, legal assistants and law clerks:

| | Hourly Rate [5] | Yrs/Experience |
|---|---|---|
| Paul A. Curtis | $120.00 | 10 |
| Terrence D. Brown | 110.00 | 11 |
| Kelly L. McCarty | 110.00 | 10 |
| J. Russell Hixson | 95.00 | 3 |
| Jan M. Mohrfeld | 70.00 | 1 |
| Clark G. McDermott | 70.00 | 1 |
| Legal Assistants | 55.00 | N/A |
| Law Clerks | 45.00 | N/A |

Plaintiffs seek the following fees and hourly rates for the various attorneys, legal assistants and law clerks at Gamble & Davis through the time period of July 31, 1992:

| Attorney Initials | Hours Spent | Hourly Rate | Fees |
|---|---|---|---|
| PAC | 777.80 | $120.00 | $ 93,336.00 |
| TDB | 223.00 | 110.00 | 24,530.00 |
| KLM | 19.70 | 110.00 | 2,167.00 |
| JRH | 1,619.80 | 95.00 | 153,881.00 |
| JMM | 19.40 | 70.00 | 1,358.00 |
| CGM | 24.60 | 70.00 | 1,722.00 |

in favor of the plan is awarded, the court shall award the plan—

. . . . .

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant ...

**5.** Though Mr. Brown and Mr. McCarty have essentially the same number of years' experience as Mr. Curtis, the hourly rate set by Gamble & Davis recognizes Mr. Curtis' greater number of years in practicing law in Iowa. Both Mr. Brown and Mr. McCarty were lateral hires.

| Legal Assistants | Hours Spent | Hourly Rate | Fees |
|---|---|---|---|
| ORS | 21.40 | 55.00 | 1,177.00 |
| KSF | 5.20 | 55.00 | 286.00 |
| GTG | 118.10 | 55.00 | 6,495.50 |
| SRL | 25.00 | 55.00 | 1,375.00 |
| BN | 31.50 | 55.00 | 1,732.50 |
| MPM | 221.70 | 55.00 | 12,193.50 |
| MLJ | 5.90 | 55.00 | 324.50 |
| | | | |
| Law Clerks | Hours Spent | Hourly Rate | Fees |
| BGS | 24.40 | 45.00 | 1,098.00 |
| KGS | 97.30 | 45.00 | 4,378.50 |
| KKH | 15.50 | 45.00 | 697.50 |
| LRS | 1.00 | 45.00 | 45.00 |
| TOTAL FEES: | | | $306,797.00 |

When Defendants correctly asserted that some of attorney Hixson's hours were incurred while he was a law clerk, Plaintiffs voluntarily reduced the time claimed for Hixson while he was a law clerk by lowering his current requested hourly rates for that work to the current hourly rates for law clerks.

This reduced Plaintiffs' fees claimed, through July 31, 1992, from $306,797.00 to $304,427.00, a decrease of $2,370.00.

For the time period from August 1, 1992 until December 31, 1992, Plaintiffs seek the following attorney fees for attorneys and legal assistants at Gamble & Davis:

| Attorney Initials | Hours Spent | Hourly Rate | Fees |
|---|---|---|---|
| JVW | .20 | $120.00 | $ 24.00 |
| TDB | 102.40 | 110.00 | 11,264.00 |
| JRH | 165.30 | 95.00 | 15,703.50 |
| | | | |
| Legal Assistants | Hours Spent | Hourly Rate | Fees |
| KSF | .90 | 55.00 | 49.50 |
| TOTAL FEES: | | | $27,041.00 |

Thus, Plaintiffs seek $331,468.00 in attorney fees and $29,221.61 in expenses for a total claim of attorney fees and expenses in the amount of $360,689.61.

### B. *The Defendants' Contentions*

In their resistances to Plaintiffs' motions for attorney fees, the Defendants raised the following contentions:

(1) The amount of attorney fees requested by Plaintiffs' counsel is unreasonable. Defendants assert that a significant number of hours was expended on unnecessary, unspecified, excessive and duplicative research, correspondence, conferences and pleadings;

(2) J. Russell Hixson, a 1989 law school graduate and the principal attorney for Plaintiffs in terms of time expended on Plaintiffs' case, billed many unnecessary, unspecified and excessive hours for corre-

spondence, legal research, office conferences and "attention to certain matters."

(3) Plaintiffs' counsel's records of hours expended are unreliable. The time entries fail to specify the nature of correspondence or type of research performed. Additionally, the billing records reflect that Hixson expended 26.7 hours in one 24 hour day;

(4) The December 2, 1992, hearing on the issue of front pay was unnecessary and, therefore, Plaintiffs' attorneys should not be compensated for unnecessary work;

(5) That Plaintiffs' time expended should be reduced because they did not prevail on all theories pled in their original complaint;

(6) That 192.8 hours expended before filing suit against the Defendants includes time and hours expended preparing and filing charges with the Equal Employment Opportunity Commission and are not compensable;

(7) Whether to award attorney fees under ERISA is discretionary and these fees should not be awarded;

(8) Plaintiffs may not recover expert witness fees under ADEA attorney fee provisions; and, finally,

(9) Plaintiffs' claim for reimbursement of costs for postage, telephone, legal research and other miscellaneous items are not recoverable.

## IV. *FINDINGS OF FACT*

The following factual findings are based on the affidavits submitted in the case as well as the evidence adduced at the attorney fees hearing held on April 28, 1993. Throughout this litigation the Plaintiffs were represented by lawyers from the Gamble & Davis law firm in Des Moines. Gamble & Davis, a professional corporation, presently consists of twenty-six lawyers. Members of Gamble & Davis and its predecessors have been practicing law in Des Moines, Iowa continuously since 1918. The firm has a general practice serving clients in most areas of the law.

The three primary lawyers from Gamble & Davis representing the Plaintiffs in this litigation are Paul A. Curtis and Terrence D. Brown, partners (technically shareholders, in that Gamble & Davis is a professional corporation) and J. Russell Hixson, an associate with the Gamble & Davis law firm since July, 1989.

Paul A. Curtis has approximately ten years of legal experience. He is a 1982 graduate of the University of Michigan law school, and has been practicing with Gamble & Davis since January, 1983. He practices primarily in the labor and employment law area. Mr. Curtis has worked on this case since before suit was filed.

Terrence D. Brown graduated from Washington University in St. Louis, Missouri in 1981. He specializes in civil trial practice but does not specialize in any specific area of civil law. Mr. Brown has over eleven years of trial experience. Shortly before trial, Mr. Brown substituted as lead trial counsel for Mr. Curtis. The Defendants do not challenge any of the hours claimed by Attorney Terrence D. Brown.

J. Russell Hixson graduated from the University of Iowa law school in 1989. Mr. Hixson's undergraduate degree is also from the University of Iowa where he majored in accounting. Mr. Hixson has been involved in this litigation since he was hired by the firm as a summer law clerk in the summer of 1988. At that time, Mr. Hixson's involvement included researching legal issues and drafting legal memorandums regarding various issues contained in this litigation. After joining the Gamble & Davis law firm in July, 1989, two of Mr. Hixson's first cases, including this one, involved Defendants Monfort and Sipco. This was Mr. Hixson's first case under the ADEA. As an associate at Gamble & Davis, Mr. Hixson was supervised in this litigation by Mr. Curtis and then later by Mr. Brown. Gamble & Davis assigned Mr. Hixson to handle all discovery issues in this litigation.

The court finds that Plaintiffs' counsel's time records in support of the fee application are reliable. While the Defendants contest the reliability of Plaintiffs' counsel's time records, their sole basis for this assertion is the fact that Attorney Hixson billed for 26.7 hours on December 28, 1991. The court finds that this was a simple error involving adding time from December 28 and December 29, 1991, and reporting it as time for a single day. The court is unwilling to conclude that the 77 pages of single-spaced time

entries extending over a 52 month period are unreliable simply because the Defendants were able to find this one error. While the court has grave reservations about the specificity of Plaintiffs' time keeping records, discussed in detail Section IV, 2(a) of this opinion, the court is convinced that these contemporaneous time records reliably reflect the amount of time Plaintiffs' counsel claim they expended in this litigation.

This case was legally complex, especially in terms of the jury instructions. Indeed, the trial judge observed during the instruction conference that in over a quarter of a century of state and federal trial judging, he found this case to be one of the most legally difficult in terms of instructions.

## V. *ANALYSIS*

### A. *Overview of the Applicable Law Relating to ADEA and ERISA Attorney Fees*

■ The starting point for determining reasonable fees under the ADEA is a determination of Plaintiffs' "lodestar."[6] "The lodestar is 'the product of reasonable hours times a reasonable rate.' *Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986)." *M.C. Jeffers v. Clinton*, 992 F.2d 826, 828 n. 1 (8th Cir.1993). Indeed, the United States Supreme Court has recently stated that in construing § 1988 attorney fees, "we have generally turned away from the contingent-fee model to the lodestar model of hours reasonably expended compensated at reasonable rates." *Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S.Ct. 1679, 1682, 109 L.Ed.2d 74 (1990); *see also City of Burlington v. Dague*, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); *Pennsylva-*

nia v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*); *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion); *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

In discussing the usefulness and the role of the lodestar methodology, the United States Supreme Court has indicated:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall*, 205 U.S. App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

*Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992). *See also Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Rhodes v. Stewart*, 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

---

**6.** While 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b) does not use the phrase "prevailing party" the Plaintiffs here are clearly prevailing parties under the generous formulation of that term utilized by the United States Supreme Court:

> " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' "

More recently, the United States Supreme Court in *Delaware Valley*, 478 U.S. at 565–66, 106 S.Ct. at 3098, has emphasized that the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974)[7] "should be used to set the reasonable number of hours and reasonable hourly rate components of the fee award formula." *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir.1988).[8]

■ In considering Plaintiffs' claims for attorney fees under ERISA, district courts apply a five factor standard which has been adopted by the Second, Third, Fifth, Eighth, Ninth, Tenth and Eleventh Circuits. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Ben. Plan*, 698 F.2d 593 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir.1983); *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir.1980); *Lawrence v. Westerhaus*, 749 F.2d 494 (8th Cir.1984); *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587 (9th Cir.1984); *Gordon v. U.S. Steel Corp.*, 724 F.2d 106 (10th Cir.1983); *Fine v. Semet*, 699 F.2d 1091 (11th Cir.1983). This five factor standard considers (1) the degree of bad faith or culpability of the losing party;

**7.** *Johnson* called for consideration of twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

**8.** This methodology presents a shift in the earlier approach where the court was to arrive at a lodestar by multiplying hours reasonably expended by the reasonable hourly rates, and then adjusting the lodestar, where appropriate, by considering the remaining *Johnson* factors (as opposed to the two post-lodestar factors of contingency and quality articulated in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I)*, 487 F.2d 161 (3rd Cir. 1973), *vacating* 341 F.Supp. 1077 (E.D.Penn.1972); as amplified in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. (Lindy II)*, 540 F.2d 102 (3rd Cir. 1976) (en banc) *rev'g* 382 F.Supp. 999

(2) the ability of such party to personally satisfy an award of fees; (3) whether such award would deter other persons acting under similar circumstances; (4) the amount of benefit to the action as conferred on the members of the pension plan; and (5) the relative merits of the parties' positions.[9]

Guided by these general principles concerning the award of attorney fees under the ADEA and ERISA, the court must first determine the appropriate lodestar for the Plaintiffs.

**B. Determination of Plaintiffs' Lodestar Request**

**1. Determining Plaintiffs' Reasonable Hourly Rate**

***a. The Application of Current Rather Than Historical Rates***

The United States Supreme Court has recognized that: "in setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Jenkins*, 491 U.S. at 282, 109 S.Ct. at 2468 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987)).

(E.D.Penn.1974)). The shifting contours for calculating attorney fees in the United States Court of Appeals for the Eighth Circuit were succinctly described by Judge Lord in three opinions which carefully explore the history of the *Johnson–Lindy* tug-of-war. *Rajender v. University of Minn.*, 546 F.Supp. 158 (D.Minn.1982); *McDonald v. Johnson & Johnson*, 546 F.Supp. 324 (D.Minn. 1982), *vacated*, 722 F.2d 1390 (8th Cir.1983); *Vickerman v. Hennepin County Probate Court*, 543 F.Supp. 165 (D.Minn.1982).

**9.** In Defendants' Supplemental Resistance to Plaintiffs' Supplemental Application for Attorney Fees and Expenses filed April 27, 1993, Defendants urge that Plaintiffs have failed to meet the five part test for an award of ERISA attorney fees under *Lawrence v. Westerhaus*, 749 F.2d 494, 495 (8th Cir.1984). Application of the five part test leads this court to the conclusion that Plaintiffs are entitled to a fee award under ERISA. Neither of the parties has urged the court to differentiate or pro-rate Plaintiffs' attorney fees based on the ADEA and ERISA. The court declines to do so on its own. Moreover, Plaintiffs' counsel's "block billing" time records, more fully discussed in Section V(2)(a), make such allocation impossible.

When litigation is protracted, federal courts have frequently awarded current rates for all work performed on a case rather than historical rates. Use of current rates accounts for inflation and loss of interest. *See e.g., Iqbal v. Golf Course Superintendents Assoc. of America*, 900 F.2d 227 (10th Cir. 1990) (inflation and delay appropriate basis to increase rates); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir.1984); *Burgess v. Premier Corp.*, 727 F.2d 826 (9th Cir.1984) (noting that an award at current hourly rates compensates counsel for increased experience as well as for inflation and loss of the use of money, but that it was not an abuse of discretion to award current hourly rates); *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983) (noting that this method also avoids problems of taking evidence on appropriate rates for earlier years); *Palmer v. Shultz*, 598 F.Supp. 382 (D.D.C.1984), *vacated and remanded*, 798 F.2d 508 (D.C.Cir.1986) (per curiam) (awarding fees at current hourly rates in a suit against the United States, although the defendant argued that this was the equivalent of interest, which cannot be awarded against the United States); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1096 n. 16 (5th Cir.1982), *modified on other grounds*, 701 F.2d 542 (5th Cir.1983) (en banc) (current hourly rates used "to compensate counsel for inflation and delay in receipt of payment"); *City of New York v. Darling–Delaware*, 440 F.Supp. 1132, 1134 (S.D.N.Y.1977) (current rates for seven years of litigation "to compensate for lost interest and inflation").

■ In this litigation, Plaintiffs' counsel are requesting 1992 current rates rather than their historical rates. For example, Mr. Hixson's hourly rate was $65.00 per hour in 1989 and was $95.00 per hour in 1992. The court finds that Plaintiffs' counsel are entitled to be compensated at their requested 1992 current rates. "When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable

decision finally eventuates, which may be years later. . . . Meanwhile, their expenses of doing business continue and must be met." *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987)). Due to Plaintiffs' counsel's substantial delay in payment, they are clearly entitled to be compensated at their 1992 current rates, rather than historical rates.

**b. The Determination of Plaintiffs' Reasonable Hourly Rates Utilizing the Market Rate Approach**

■ In *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court held that, in establishing "reasonable fees" under § 1988, fees "are to be calculated according to the prevailing market rates in the relevant community. . . ." *Id.* at 895, 104 S.Ct. at 1547. The Court stated:

> To inform and assist the Court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895–96 n. 11, 104 S.Ct. at 1547 n. 11.[10] Thus, "where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award." *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir.1988); *see also Shakopee Mdewakanton Sioux Community v. City of Prior Lake, Minn.*, 771 F.2d 1153, 1160–61 (8th Cir.1985), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986). Using well defined billing rates "is consistent with *Blum*, for 'in most cases, billing rates reflect market rates—they provide an efficient and fair short cut for determining the

---

**10.** In *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 n. 3 (8th Cir.1988), the Eighth Circuit appeared to express some reservation whether the holding of *Blum* concerning prevailing market rates actually applied to private attorneys. The court stated:

> The actual holding of *Blum* is somewhat narrower than its language, since, on its facts, *Blum* applies only to salaried attorneys employed by legal aid organizations. *Blum* "did not decide whether the fee awards of private attorneys with an established billing rate must be calculated in the same manner" as those for

market rate.' " *McDonald,* 860 F.2d at 1459 (citing *Student Pub. Interest Research Group, Inc. v. AT & T Bell Lab.,* 842 F.2d 1436, 1445 (3rd Cir.1988)). Finally, an attorney's ordinary billing rate is not conclusively "reasonable" but should be compared to the usual and customary fee for similar work in the community. *McDonald,* 860 F.2d at 1459; *Shakopee Mdewakanton Sioux,* 771 F.2d at 1160; *Avalon Cinema Corp.,* 689 F.2d at 140.

■ Plaintiffs' counsel have offered their own affidavits which set forth the hourly rates of the various lawyers in the Gamble & Davis law firm who have represented the Plaintiffs in this action. The hourly rates are for the calendar year 1992. Additionally, Plaintiffs' counsel, through their affidavits, have submitted information with regard to hourly rates charged by a second Des Moines law firm. The United States Supreme Court requires the fee applicant "to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895–96, 104 S.Ct. at 1547. The evidence adduced by Plaintiffs' counsel concerning prevailing community market rates is quite marginal in light of the standard articulated in *Blum.* However, based upon Plaintiffs' limited evidence and the court's knowledge of prevailing community market rates,[11] the court concludes that the hourly rates sought by the Gamble & Davis attorneys in this litigation are well within the prevailing market rate for the greater Des Moines legal community. This means the hourly rates sought by the Gam-

ble & Davis lawyers are well within the range for similar services by lawyers of reasonably comparable skill, experience and reputation. Therefore, the court approves the rates sought for Paul A. Curtis at the rate of $120.00 per hour; Terrence D. Brown and Kelly L. McCarty at the rate of $110.00 per hour; J. Russell Hixson at the rate of $95.00 per hour; and Jan M. Mohrfeld and Clark G. McDermott at the rate of $70.00 per hour.

■ Plaintiffs may also recover reasonable hours expended by legal assistants and law clerks at reasonable hourly rates where "the prevailing practice is to bill paralegal work at market rates...." *Missouri v. Jenkins ex rel. Agyei,* 491 U.S. 274, 288, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989). In *Jenkins,* the Court declared: "By encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes.' *Cameo Convalescent Ctr., Inc. v. Senn,* 738 F.2d 836, 846 (7th Cir.1984), *cert denied,* 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775 (1985)." *Id.* (citations omitted). The Court in *Jenkins* went on to note that the work of legal assistants could only be recovered under § 1988 if that work were billed separately and that such separate billing "appears to be the practice in most communities today." *Id.* 491 U.S. at 289, 109 S.Ct. at 2472 (citations omitted).

Plaintiffs' evidence of prevailing community practice for separately billing legal assistants is very thin. Plaintiffs only evidence is an indication that one other law firm in one other case billed legal assistant and law clerk rates separately. The United States Supreme Court has indicated that the billing of

salaried legal aid employees. *Webb v. Maldonado,* 484 U.S. 990, 108 S.Ct. 480, 98 L.Ed.2d 509 (1987) (opinion on denial of *cert.*) (White, J., dissenting). Nevertheless, we find *Blum* instructive on the importance of market rates and note that market rates have been a primary focus of our inquiries to ascertain the reasonableness of fee awards. *See, e.g., Shakopee Mdewakanton Sioux v. City of Prior Lake,* 771 F.2d 1153, 1160 (8th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986); *Jacquette v. Black Hawk County,* 710 F.2d 455, 459 (8th Cir.1983); *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140 (8th Cir.1982)....

11. In attorney fees matters, trial courts have been instructed to utilize their own knowledge relating to various aspects of the lodestar. "The trial judge should weigh the hours claimed against his [or her] own knowledge, experience and expertise of the time required to complete similar activities." *Gilbert v. City of Little Rock, Ark.,* 867 F.2d 1063, 1066 (8th Cir.1989) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974)), *cert. denied,* 493 U.S. 812, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir. 1984) ("The Court ... may bring to bear its knowledge and experience concerning ... the time demands of the particular case.").

legal assistants and law clerks appears to be the practice in most communities.[12] This court agrees and is aware of the prevailing practice in the greater Des Moines community that legal assistants and law clerks are generally billed to clients. Therefore, the court concludes that the hourly rates sought by the Plaintiffs for legal assistance of $55.00 per hour and for law clerks of $45.00 per hour, while on the high end of prevailing community market rates, are within the range of prevailing community market rates and will be awarded for time reasonably expended by legal assistants and law clerks in this litigation.

### 2. The Determination of Plaintiffs' Counsel's Reasonable Hours Expended

### a. Plaintiffs' Counsel's Record Keeping

Defendants assert that Plaintiffs' counsel's records of hours expended are unreliable and that the time entries fail to specify the nature of the type of work performed. Court have generally held that attorneys seeking fees under federal fee-shifting statutes present to the court fee applications that "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In Re Donovan,* 877 F.2d 982, 994 (D.C.Cir.1989). Thus, where the "documentation of hours is inadequate, the ... court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *see also Norman v. Housing Auth.,* 836 F.2d 1292, 1303 (11th Cir.1988); *United Slate Tile & Composition v. G & M Roofing,* 732 F.2d 495, 502 n. 2 (6th Cir.1984) (supporting documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended. . . .").

■ In this litigation, the court is troubled by Plaintiffs' counsel's use of "block billing" in which Plaintiffs' counsel specifies the various tasks performed in a day and the total amount of time expended on these tasks without specifically indicating how much time was spent on each individual task. Plaintiffs' counsel's time records reflect nothing but block billing. The court will use the time entries for October 17, 1991 as an example, however, the example could be drawn from any one of Plaintiffs' counsel's hundreds of time entries. On October 17, 1991 Plaintiffs' counsel Hixson claims 11.3 hours and Plaintiffs' counsel Curtis claims 11 hours for the following block entry:

| 10/17/91 | ATTENTION TO DAMAGE CALCULATIONS AND DOCUMENTS TO SUPPORT. MEETING WITH | 11.30 JRH |
| | ALL CLIENTS RE AFFIDAVITS ON FRAUD AND DAMAGES. WORK ON ADDITIONAL DOCUMENTS. TELEPHONE CONFERENCE WITH HOUGHTON. REVIEW AND REVISION OF BRIEF PREPARE CORRESPONDENCE TO COURT RE RESPONSES TO MOTIONS. PREPARATION AND DICTATION OF AFFIDAVITS FOR CLIENTS RE INDIVIDUAL MOTION FOR SUMMARY JUDGMENT. MEETING WITH CLIENTS RE SAME. REVIEW OF STATUS MOTIONS. CLAIMS AND EVIDENCE. PREPARATION OF RESISTANCE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE SEVERANCE. SEARCH OF RECORDS FOR EXHIBITS. CONFERENCES WITH CLIENTS RE MEETING. WORK RE DAMAGES. PREPARATION OF AUTHORIZATIONS FOR INFORMATION FROM SOCIAL SECURITY. | 11.00 PAC |

12. The National Association of Legal Assistants in their amicus curiae brief in *Jenkins* indicated that 77 percent of 1,800 legal assistants responding to a survey of the Association's membership "stated that their law firms charged clients for paralegal work on an hourly billing basis." *Jenkins,* 491 U.S. at 289 n. 11, 109 S.Ct. at 2472 n. 11 (citing Brief for National Association of Legal Assistants as Amicus Curiae 11).

Regrettably, the type of record keeping utilized by Plaintiffs' counsel in this litigation renders it virtually impossible for the court to determine whether the time spent on any specific function was reasonable. In the above example, the court would have no way of knowing how much time was spent in any specific task, such as "work regarding damages." Also, because that particular description is so vague, the court has no idea what particular work was performed regarding which particular claim of damages. Moreover, the block billing fails to disclose which attorney performed which tasks and also fails to disclose how much time was expended by each attorney on each task. This type of billing is completely at odds with the requirement that the billing must provide sufficient detail so the court can ascertain whether the work performed was reasonably necessary and whether the time claimed for the work was reasonably expended. Moreover, the court concludes that Plaintiffs' block billing fails to comply with Local Rule of Court 22 which states, in relevant part: "The claimed amount shall be supported by adequate itemization." Block billing, while no doubt utilized by some firms in the greater Des Moines market area, is grossly insufficient to satisfy the "adequate itemization" requirement of Local Rule of Court 22 and federal fee-shifting statutes in general.

The problems created by the block billing style of record keeping was recognized in *Gries v. Zimmer, Inc.,* 795 F.Supp. 1379, 1387 (W.D.N.C.1992). There, the court permitted plaintiff to claim 21 hours for time spent on the fee application commencing March 24, 1992. Plaintiff's fee application, however, contained block billing entries for before March 24, 1992, which "mingled" charges for different matters including time spent on attorney fees. *Id.* As a result, the court could not "identify the time spent on attorneys' fees and the time spent on other matters included in the entry." *Id.* at 1387–88. Because of this flaw in the fee application, Judge Potter made "an approximate

adjustment" to the fee application and "disallowed" 32.3 hours as time charged for the fee application. *Id.* at 1388.

In *Drake v. Perrin,* 593 F.Supp. 1176, 1178–79 (E.D.Pa.1984), the court held that "lumping of services" entitled the court to disallow all such hours. The court stated:

> In many instances, counsel has lumped together under a single claim for hours, a number of different activities so it is impossible to determine how much time was allocated to each item. This confusion becomes critical because some of the items are not allowable as either unreasonable or duplicative.
>
> . . . . . .
>
> Out of fifty itemized claims for counsel fee, twenty-five consist of a combination of several activities with only one hourly claim for all services mentioned. It is plainly impossible for me to separate the proper from the improper claim. In *Hughes v. Repko,* 578 F.2d 483 (3rd Cir.1978), the court said, at page 487:
>
> > Consequently, an unanalyzed allocation of hours will not be permissible in arriving at the lodestar.
>
> I consider this so-called documentation inadequate and will disallow all of those unanalyzed allocation of hours.

*Id.* 593 F.Supp. at 1178.

Utilizing the approach in *Perrin,* the court could award Plaintiffs' counsel no fee based upon their utilization of block billing. This would be grossly unfair because there can be no real question that Plaintiffs' counsel are entitled to a substantial fee. Unfortunately, their lack of adequate billing practices—for federal civil rights fee-shifting award purposes—greatly impairs the court's ability to determine the appropriate lodestar. The court must nevertheless, seriously handicapped by Plaintiffs' counsel's billing practice, determine the appropriate number of hours reasonably expended by Plaintiffs' counsel in this litigation.

### b. Total Number of Hours Reasonably Expended by Plaintiffs' Counsel

The Defendants contend that the total amount of attorney fees requested by Plaintiffs' counsel is unreasonable and that a significant number of hours were expended on unnecessary, unspecified, excessive and duplicative research, correspondence, conferences and pleadings. The primary thrust of Defendants' challenge is to the hours expended by Mr. Curtis and Mr. Hixson. Mr. Curtis claims 777.8 hours prior to July 31, 1992. Mr. Hixson claims 1,619.8 hours prior to August 1, 1992 and 165.3 hours after August 1, 1992. Together, Mr. Curtis and Mr. Hixson, combined, claim 2,563.9 hours.

In *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991), the United States Court of Appeals for the Eighth Circuit stated:

> 'The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.' *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941. ***Inadequate documentation may warrant a reduced fee.*** *Id.; see, e.g., Ohio–Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 776 F.2d 646, 653 (7th Cir.1985); *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d [1255,] 1275. Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim. *Hensley v. Eckerhart*, 461 U.S. at 434, 437 & n. 12, 103 S.Ct. at 1939, 1941 & n. 12. Here, counsel's billing records included numerous entries such as "legal research" or "trial prep" or "met w/client." Some entries were so vague that the district court could not determine with certainty whether they were related to this litigation, much less the claims upon which H.J. ultimately prevailed.

(emphasis applied).

Courts have universally upheld the principal that fee applications may be reduced when the hours claimed are excessive, unreasonable, exaggerated, duplicative or improperly documented. *See id.* (holding that the district court did not abuse its discretion in reducing lodestar 20 percent for inadequate documentation); *Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1074 (8th Cir.1991) (holding that it was within district court's discretion to reduce expenses claimed for paralegal services where hours claimed for such services were unreasonable); *Paxton v. Union Nat. Bank*, 806 F.2d 785, 787 (8th Cir.1986) (holding that fee award could be reduced because of not all hours claimed were documented); *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 8 (1st Cir.1993) (upholding district court's fee reduction where counsel failed to submit contemporaneous time records and noting that such actions call for a substantial reduction in any award or complete disallowance); *Bernardi v. Yeutter*, 951 F.2d 971, 974 (9th Cir.1991) (holding that district court's decision to reduce hours billed in fee application by one-half was not abuse of discretion where district court found that "over 1400 attorney and 800 law clerk and paralegal hours was excessive and represented unnecessary duplication of effort, repetitious fact gathering, and simply an excessive amount of time spent on a contempt motion."); *In re Donovan*, 877 F.2d at 995–97 (reducing fee award $39,406.50 from request of $112,281.56 because of duplicative services, and inadequate documentation where legal services rendered were described merely as "legal issues," "conference re all aspects" or "call re status"); *Spell v. McDaniel*, 852 F.2d 762, (4th Cir.1988) (reducing appellate fee request to 420 hours from the more than 1400 hours claimed on grounds that hours claimed in fee request were unreasonable and inflated); *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir.1988) (reducing appellate fees that were deemed excessive); *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir.1987) (upholding fee reduction of 152.1 hours on fee

application of 415.9 hours where trial court found, *inter alia*, that co-counsel's efforts were not reasonable because they were either duplicative or unnecessary); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984) (setting forth notice that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance."); *Neely v. City of Grenada*, 624 F.2d 547, 552 (5th Cir.1980) (upholding fee request reduction for duplicative legal work); *Gries*, 795 F.Supp. at 1387 (making "approximate adjustment" to reduce fee request where counsel's block billing style did not indicate specific time spent on legal projects, and further reducing fees for duplicative and excessive work); *Evans v. Ford Motor Co.*, 784 F.Supp. 621, 622 (D.Minn.1991) (reducing fee award for excessive time spent preparing documents); *Shorter v. Valley Bank & Trust Co.*, 678 F.Supp. 714, 724 (N.D.Ill.1988) (reduced fee application for duplication caused by second plaintiff's attorney attending deposition).

■ Plaintiffs' fee documentation is clearly inadequate for the court to conduct a meaningful review regarding Defendants' claims of unnecessary, unspecified, excessive and duplicative work. However, even a review of Plaintiffs' block billing time records indicate duplication. For example, on 09/25/91, Mr. Hixson claims 7.8 hours for various tasks including "legal research re punitive damages available after Varity case." On the same day, Mr. Curtis claims 5 hours for various items including "legal research re recent Howe v. Varity decision." On 09/30/91, Mr. Curtis claims 4.0 hours in part based upon "legal research re jury trial and punitives." The very next day Mr. Hixson claims 3.6 hours for "legal research re recent 3rd Circuit case on jury trial and cases cited therein." Numerous other examples of duplication exist throughout Plaintiffs' time billing records.

Unfortunately, Plaintiffs' counsel did not provide the court with a summary of how the total number of hours claimed was expended.

The court, therefore, was required to sift through the myriad of time entries. The court has calculated that Mr. Curtis claims 56 entries for "research" or "legal research," only 2 of which have specified time amounts allocated to them. Mr. Hixson has 137 entries for "research" or "legal research," only 10 of which have specific time amounts allocated to them. Thus, Mr. Curtis and Mr. Hixson, combined, claim a total of 193 entries for "research" or "legal research." Mr. Curtis has 108 entries for "office conferences," only 6 of which have specific time allocated to them. Mr. Hixson has 194 entries for "office conference," only 17 of these entries have specific time amounts allocated to them. Thus, Mr. Curtis and Mr. Hixson, combined claim a total of 302 entries for "office conferences." "A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir.1992). Plaintiffs' counsel have failed to carry their burden of proof in establishing that the amount of legal research and office conference were reasonably necessary in this litigation. Plaintiffs' counsel have also failed to carry their burden of proof in establishing a lack of duplication between Mr. Curtis and Mr. Hixson, primarily relating to legal research and office conferences.

In addition to this obvious duplication, an independent and equally serious problem with Plaintiffs' counsel's time records is that many of the entries are so generalized that they fail to specifically identify the work performed. In *Mango v. Communication Workers of America, Local 1105*, 765 F.Supp. 152, 155 (S.D.N.Y.1991), the court disallowed time expended for entries styled "conference," "research," and "consultations." The court held that such generalized descriptions do not meet the standards for specifically identifying the work performed. *See e.g., Bode v. United States*, 919 F.2d 1044, 1947 (5th Cir.1990); *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1019 (E.D.N.Y.1986); *Henry v. First Nat'l Bank of Clarksdale*, 603 F.Supp. 658, 665 (N.D.Miss.1984); *Inmates of the*

*Maine State Prison v. Zitnay,* 590 F.Supp. 979, 984–85 (D.Me.1984). A sample listing of the following entries demonstrates this point: 4/28/88 "research re age discrimination" 5/2/88 "preparation for meeting with Swift employees"; 6/1/88 "review legal research"; 6/2/88 "legal research"; 6/3/88 "legal research"; 8/4/88 "review documents"; 11/23/88 "conference re evidence of age discrimination"; 9/4/89 "legal research"; 9/6/89 "legal research"; 10/23/89 "office conference"; 11/2/89 "office conference"; 2/28/90 "office conference"; 6/4/90 "office conference"; 7/13/90 "work re discovery"; 7/30/90 "office conference"; 8/17/90 "office conference re discovery"; 9/13/90 "office conference re discovery"; 10/18/90 "office conference"; 12/19/90 "deposition summaries"; 12/21/90 "deposition summaries"; 12/26/90 "document control"; 2/11/91 "attention to documents produced by defendants"; 2/13/91 "attention to discovery"; 2/20/91 "attention to discovery"; 4/15/91 "office conference re case"; 4/19/91 "office conference re case"; 5/13/91 "attention to file"; 5/15/91 "office conference re case and discovery"; 5/20/91 "attention to discovery"; 5/23/91 "office conference re case"; 5/31/91 "research re ERISA claims"; 6/3/91 "legal research re claims"; 6/11/91 "attention to file"; 7/15/91 "office conference re case"; 8/9/91 "attention to file, attention to admissions, office conference".

There are literally hundreds of other entries in Plaintiffs' time records that are similar to the above entries. These entries are simply so vague it is impossible for the court to determine whether or not the amount of time expended is excessive or unnecessary.

The court is left with a firm conviction that the total number of hours claimed by Plaintiffs is excessive based in part on duplication of effort between Mr. Curtis and Mr. Hixson—even factoring in the complexity of this litigation and the fact that the Defendants employed a Stalingrad defense, resisting Plaintiffs' every turn and forcing them to earn their hard fought victory by contesting their every action and request and bombarding the Plaintiffs with pretrial motions.[13]

"Fee-shifting statutes are designed to "ensure effective access to the judicial process for persons with civil rights grievances," *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937, (citation and internal quotation marks omitted), not to serve as a full employment or continuing education programs for lawyers and paralegals." *Lipsett,* 975 F.2d at 938.

Clearly, the complexity of this litigation and the manner in which the Defendants chose to defend it, justify a very substantial fee award. Nevertheless, after carefully reviewing the time records of Plaintiffs' counsel, the court is left with a firm and abiding conviction that there was some unnecessary duplication of effort between Mr. Curtis and Mr. Hixson. The fee affidavits of both Mr. Curtis and Mr. Brown state: "Duplication of effort has been avoided to the extent consistent with the proper representation of the Plaintiffs." Affidavit of Paul A. Curtis, ¶ 10 filed 11/19/92 and Affidavit of Terrence D. Brown, ¶ 12 filed 11/19/92. There was no testimony at the fee hearing and the affidavits of counsel themselves contain precious little information as to exactly how Plaintiffs' counsel attempted to avoid duplication of effort in this litigation. The court finds that despite Plaintiffs' counsel's statements and perhaps their aspirations to avoid unreasonable duplication, their billing records indicate otherwise. Indeed, both Mr. Brown's and Mr. Curtis' affidavits assert they attempted to have "the least costly member of our firm handle certain matters." *Id.* This resulted in the least experienced member of the litigation team, Mr. Hixson, who began working on this case as a summer law clerk before his graduation from law school, expending over 1,700 hours on this litigation. This being Mr. Hixson's first ADEA and ERISA case, there was certainly a substantial learning curve involved for him. It is simply unfair to the Defendants to shift all of Mr. Hixson's time to their pocketbook. In this regard, the statement by the court in *Robert M. v. Benton,* 671 F.2d 1104, 1107 (8th Cir.1982), is applicable:

> represented by highly skilled and knowledgeable labor and employment law counsel who continue to vigorously and zealously contest this litigation.

---

**13.** This is the 246th pleading or order filed in this litigation. Defendants filed eleven motions for summary judgment in this action. They were

[P]laintiff's attorney did not have any past experience with such cases, in that when plaintiff's counsel became involved in this matter, he had just recently graduated from law school and could be termed "inexperienced." In fact, the Court concludes plaintiff's counsel became "experienced" and learned from the proceedings in this matter. For this reason, the Court is of the opinion that plaintiff's attorney spent what this Court believes to be time educating himself, which is commendable, but which should not be charged to the defendant.

This observation is in no way a criticism of Mr. Hixson. Mr. Hixson is a bright, articulate and industrious lawyer. He now has obtained, as a result of this litigation, substantial knowledge regarding the ADEA and ERISA. While his conduct in this litigation has been commendable, fundamental fairness dictates that the enormous amount of time expended on this litigation—in part due to Mr. Hixson's lack of experience—simply cannot be shifted to these Defendants.

 Therefore, the court will make the following reductions in Plaintiffs' requested lodestar. Based upon inadequate documentation, which includes the block billing time records as well as the vagueness in describing a substantial portion of the time entries,

the court will reduce the time claimed by Plaintiffs' counsel, legal assistants and law clerks by fifteen percent (15%). *See e.g., H.J., Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir.1991) (aff'g district court's reduction of the lodestar by 20% for inadequate documentation). The court further reduces the time claimed by Mr. Curtis and Mr. Hixson by an additional ten percent (10%) to reflect duplication of counsel's efforts. Three factors militate against an even greater reduction. First, Plaintiffs' counsel have exercised some billing judgment by voluntarily reducing their claimed fees by a total amount of $15,884.00 prior to the fee hearing. Secondly, Plaintiffs' counsel exhibited some additional restraint by asking for 1992 current rates rather than 1993 current rates. Finally, Plaintiffs' counsel have not asked for any time expended in this litigation during calendar year 1993.

### 3. Computation of Plaintiffs' Counsel's Lodestar

Plaintiffs' counsel have claimed a lodestar of $331,468.00 in attorney fees. This is reduced by fifteen percent (15%) ($49,720.20) for inadequate billing documentation. Mr. Curtis and Mr. Hixson have requested the following hours and hourly rates in this litigation:

| Attorney Initials | Hours Spent | Hourly Rate | Fees |
|---|---|---|---|
| P. Curtis | 777.80 | $120.00 | $ 93,336.00 |
| J.R. Hixson | 1,785.10 | 95.00 | 169,584.50 |
| TOTAL | | | $262,920.50 |

Mr. Curtis and Mr. Hixson's lodestar request of $262,920.50 has already been reduced by fifteen percent (15%) (of the $49,720.20 reduction, $39,438.00 is allocated to Mr. Curtis and Mr. Hixson's lodestar) for inadequate documentation, leaving a lodestar for Mr. Curtis and Mr. Hixson of $223,482.00. This lodestar is further reduced by an additional ten percent (10%) ($22,348.00) for duplication of effort. Thus, Plaintiffs' total lodestar re-

quest for attorney fees of $331,468.00 is reduced by fifteen percent (15%) for inadequate billing documentation ($49,720.20) and by ten percent (10%) in Mr. Curtis' and Mr. Hixson's requested lodestar ($22,348.00) for a total reduction in the lodestar of $72,068.20. Therefore, subtracted from Plaintiffs' counsel requested lodestar of $331,468.00 are reductions totalling $72,068.20 (for inadequate documentation and duplication) resulting in a

total lodestar fee to Plaintiffs' counsel of $259,399.80.[14]

## C. Whether Plaintiffs' Lodestar Should Be Further Reduced for Time Spent Before the Equal Employment Opportunity Commission and the Iowa Civil Rights Commission

 Defendants contend that 192.8 hours expended before filing suit against the Defendants should be reduced from Plaintiffs' lodestar request. Initially, the court notes that due to Plaintiffs' "block billing," 192.8 hours appears to be an inflated number of hours spent before the EEOC and the ICRC. Because the court concludes that Plaintiffs are entitled to this time expended, the court need not determine exactly how many hours Defendants allege should be reduced from Plaintiffs' lodestar calculation. In *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 282 (2d Cir.1987), the court rejected defendant's claim that the time Reichman's counsel spent presenting her claim to state and federal administrative agencies is not compensable under the ADEA. The court held:

> By requiring resort, where available, to administrative remedies for age discrimination prior to bringing a suit under the ADEA, Congress intended to give state agencies a significant role in combatting discrimination in the workplace, similar to the role given state agencies under Title VII. *Oscar Mayer & Co. [v. Evans,]* 441 U.S. [750,] 755–56, 99 S.Ct. [2066,] 2071–72 [, 60 L.Ed.2d 609]. "Only authorization of fee awards ensures incorporation of state procedures as a meaningful part of the ... enforcement scheme." *New York Gaslight Club, Inc. [v. Carey ]*, 447 U.S. [54,] 65, 100 S.Ct. [2024,] 2032 [, 64 L.Ed.2d 723], (Title VII case). Since Congress specifically authorized fee awards for private plaintiffs under the ADEA, and required that those

plaintiffs at least give administrative proceedings a chance before commencing an action in federal court, we conclude that Congress intended a fee award under the ADEA to cover time spent on administrative proceedings that were a prerequisite to the action. See *Bleakley v. Jekyll Island–State Park Authority*, 536 F.Supp. 236, 242–44 (S.D.Ga.1982).

*Id.* While the parties cite various authorities allegedly on both sides of this question, the court determines that the view articulated in *Bonsignore, Brignati & Mazzotta, P.C.* is the better view. Moreover, Defendants' reliance on *Kennedy v. Whitehurst*, 690 F.2d 951 (D.C.Cir.1982) cited in Defendants' Supplemental Resistance to Plaintiffs' Supplemental Application for Attorneys' Fees and Expenses filed April 27, 1993 is seriously misplaced. *Whitehurst* dealt solely with federal employees. This is a critical distinction, for as the court pointed out in *Whitehurst*:

> Although this language is quite broad and tracks the working of the provision of the ADEA covering private sector employees, section 15 does not include the language contained in section 7 that incorporates the FLSA remedial scheme. Thus, in contrast to the ADEA private enforcement scheme detailed in section 7 through reference to FLSA section 16, the Act's federal employee compliance scheme contains no *explicit* reference to the provision of any form of attorneys' fees. Rather, federal courts are simply empowered to grant such relief *"as will effectuate the purposes"* of the Act. 29 U.S.C. § 633a(c) (1976) (emphasis added).

*Whitehurst*, 690 F.2d at 955–56. Indeed, the court noted at the conclusion of its opinion that: "[W]e do not today express a view on the availability of fee awards to *private* sector employees for legal services performed under the ADEA at the administrative level."

---

**14.** Other federal courts have expressed a preference for actual hour by hour reductions in the lodestar rather than by an across the board percentage. See e.g., *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 261 (8th Cir.1991); *Daggett v. Kimmelman*, 811 F.2d 793, 797–98 (3d Cir.1987); ("[c]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application.... These courts have endorsed percentage cuts as a practical means of

trimming fat from a fee application." (citations omitted)); *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983). Here, Plaintiffs' counsel's "block billing" timekeeping made it impossible for the court to engage in specific hour by hour review. Thus, the percentage reduction is the court's only available means to adjust Plaintiffs' counsel's requested lodestar.

*Id.* at 966. Defendants' argument that Plaintiffs' lodestar request should be reduced for time spent in state and federal administrative proceedings is rejected. Plaintiffs' counsel are entitled to be compensated for this time.

### D. Plaintiffs' Contested Claim for Expenses

Plaintiffs claim a total of $29,221.61 in expenses. Defendants contest several aspects of these expenses. For example, they contest $9,676.00 that was paid to Plaintiffs' expert witness, Dr. Wayne Newkirk, who testified on front pay issues at the December 2, 1992 hearing.[15] Defendants' Resistance to Plaintiffs' Supplemental Application for Attorneys' Fees and Expenses, ¶ 5. Defendants also contest postage, telephone costs and photocopy charges in the amount of $5,025.53. Brief in Support of Defendants' Resistance to Plaintiffs' Supplemental Application for Attorneys' Fees and Expenses filed September 24, 1992, p. 11–12. Additionally, Defendants contest Westlaw research in the amount of $4,821.35.

 First, concerning Plaintiffs' expert witness fees, the United States Supreme Court has clearly held that § 1988 provides no authority to shift expert witness fees in civil rights litigation. *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 95, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991).[16] Furthermore, Plaintiffs may not obtain an award of expert witness fees under 29 U.S.C. § 216(b) because *Casey* has been held to preclude the award of expert fees in ADEA litigation. *See Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 595–97 (10th Cir.1992). The only fees which Plaintiffs are for eligible are those provided for under 28 U.S.C.

§ 1920(3) and 1821(b). Section 1821(b) provides for fees of $40 per day for each day's attendance. Plaintiffs are therefore entitled to receive only $40 for Dr. Newkirk's services.[17]

 Plaintiffs also request in their application for attorney fees that they be reimbursed for Westlaw computer research utilized in this case. As one court has aptly pointed out:

> Lexis is an essential tool of a modern efficient law office. As such, it saves lawyers' time by increasing the efficacy of legal research. Denial of reimbursement for Lexis charges in a proper case would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with Lexis. This, in turn, would lead inevitably to increased staffing of civil rights cases, and thus to larger fee awards. The Court will, therefore, treat lexis charges as other cost items in the case.

*United Nuclear Corp. v. Cannon*, 564 F.Supp. 581 (D.R.I.1983); *see, e.g., Alberti v. Sheriff of Harris County*, 688 F.Supp. 1176, 1202 (S.D.Tex.1987), *modified sub nom., Alberti v. Klevenhagen*, 688 F.Supp. 1210 (S.D.Tex.), *aff'd in part and rev'd in part sub nom., Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir.), *vacated in part on reh'g sub nom., Alberti v. Klevenhagen*, 903 F.2d 352 (5th Cir.1990); *Equal Employment Opportunity Comm'n v. Sears, Roebuck and Co.*, 111 F.R.D. 385, 393 (N.D.Ill.1986); *Friedlander v. Nims*, 583 F.Supp. 1087, 1089 (N.D.Ga.), *appeal dismissed sub nom., F/S Communications v. Gulf Coast*, 747 F.2d 1467 (11th

---

**15.** Neither side provided the court with any information concerning how this amount was computed. The court was left on its own to cull through the time and expense records to ascertain exactly what was paid to Dr. Newkirk. It would appear that check no. 8008, in the amount of $1,286.00, and check no. 7918, in the amount of $8,390.00, contained on Gamble & Davis' professional statement dated December 12, 1992 were paid to Dr. Newkirk.

**16.** In the Civil Rights Act of 1991, Congress amended 42 U.S.C. § 1988, to expressly provide for expert witness fees. *See* 42 U.S.C. 1988(c). Congress, however, did not include the ADEA in

the amendment regarding expert witness fees. *See Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 597 n. 10 (10th Cir.1992). Thus the provisions of the 1991 Act are inapplicable herein. Even if the provisions of the Civil Rights Act of 1991 were applicable to this case, the Eighth Circuit has clearly held that this provision of the Act does not apply retroactively. *Huey v. Sullivan*, 971 F.2d 1362, 1366 n. 5 (8th Cir.1992).

**17.** This fee will not be awarded as part of the attorney fees, but is more appropriately awarded as part of the bill of costs. *See* 28 U.S.C. §§ 1821(b) and 1920.

Cir.1984). The court concurs in this assessment, and finds that Plaintiffs are entitled to be reimbursed for Westlaw legal research in the amount of $4,821.35.

■ Plaintiffs further request certain costs, for postage, telephone and photocopying, associated with this litigation. As the Fifth Circuit Court of Appeals has pointed out:

> All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client.

*Associated Builders & Contractors, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 380 (5th Cir.1990); *see, e.g., Northcross v. Board of Education*, 611 F.2d 624, 630 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983). The court finds that the costs sought be Plaintiffs are of the type usually charged to a fee paying client during the course of legal representation and are therefore compensable under section 1988. Plaintiffs are entitled to their claim of $5,025.53 for expenses related to this litigation.

Plaintiffs' counsel's request for reimbursement of $29,221.61 will be granted subject to a reduction of $9,676.00 for Dr. Newkirk. Therefore, Plaintiffs' counsel will be awarded $19,545.61 in reasonable costs and expenses.[18]

## VI. *CONCLUSION*

**IT IS RESPECTFULLY RECOMMENDED** that, pursuant to 28 U.S.C. § 636(b)(1)(B), Plaintiffs' counsel are entitled to reasonable attorney fees in the amount of $259,399.80 plus reasonable costs and expenses in the amount of $19,545.61; for a total amount of $278,945.41 to be awarded to Plaintiffs' counsel. The following chart summarizes the court's reduction to Plaintiffs' counsel's requested lodestar:

| | Attorney Fees | Costs | Total |
|---|---|---|---|
| Requested lodestar | 331,468.00 | 29,221.61 | 360,689.61 |
| Reductions to lodestar: | | | |
| inadequate documentation (15%) | < 49,720.20> | | |
| duplication by Mr. Curtis and Mr. Hixson (10%) | | < 22,348.-00> | |
| expert witness fees not allowed | | < 9,676.00> | |
| Lodestar awarded | 259,399.80 | 19,545.61 | <u>278,945.41</u> |

**IT IS ORDERED** that the parties shall have ten (10) days after service of a copy of the report and recommendation to file written objections, pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. *See* Fed.R.Civ.P. 72; *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir.1990). Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Nix*, 897 F.2d at 357.

**IT IS SO ORDERED. DATED** this 2nd day of June, 1993.

---

18. Defendants' remaining contentions seeking reductions in Plaintiffs' lodestar have been considered by the court and are rejected for lack of merit.