BOWMAN, Circuit Judge.
Former employees of Entergy Corporation, Inc. sued Entergy and its subsidiaries for age discrimination on theories of disparate impact and disparate treatment. The case was tried to a jury for eighteen days, and after six days of deliberation the jury returned verdicts for Entergy on all the disparate impact claims and on all but five of the disparate-treatment claims.[2] Those plaintiffs who did not prevail appeal, and we affirm.
Responding to anticipated deregulation and competition in the electric utility industry, Entergy developed an evaluation system that ranked employees in comparison to one another. Entergy’s prior evaluation system did not rate employees in relation to other employees, and it had produced too many high evaluations, resulting in most employees’ evaluation scores being grouped in the same small range. Under .the new evaluation system, immediate supervisors ranked the performance (ie., current job performance) and the potential (ie., potential to advance or assume greater responsibility) of each employee within their supervision. Employees within a peer group then were listed from best to worst as to performance and from best to worst as to potential. From these lists, employees were placed on a matrix that reflected their relative performance and potential, producing a ranking number for each employee. These results were progressively “rolled-up” through the company to compare employees to their peers company-wide. Each of the appellants received a low ranking despite satisfactory to excellent evaluations for the previous three years under the old evaluation system. Entergy conducted a preliminary adverse-impact analysis that determined the ranking system had an adverse impact on the basis of age, but not further analysis was performed.
In a parallel process, Entergy implemented a plan to reorganize its Independence and White Bluff coal-fired generating plants. The appellants were discharged pursuant to the subsequent reduction in work force at these plants. The managers of the two plants placed employees into the positions created by the reorganization after considering various factors, including the ranking numbers created by the new evaluation system. The appellants’ disparate-impact claims were based on the use of the ranking system to select employees to fill the reorganized positions. The appellants argued that the ranking system adversely affected older employees and that their low individual rankings caused them not to be selected for positions.
The disparate-impact claims were submitted to the jury on interrogatories. The *1013 jury found that Entergy had used a selection procedure that had an adverse impact on employees age forty or older and that each appellant was discharged through use of the ranking system. The jury, however, found that Entergy had a business justification for using the ranking system and that the appellants had not proved the availability of an equally effective selection system having less adverse impact upon older employees.
The appellants argue that the District Court[3] erred in instructing the jury on disparate impact, in denying its motions for judgment as a matter of law on the disparate-impact claims, and in making certain evidentiary rulings.
The appellants argue that the District Court erroneously instructed the jury in accordance with Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Pointing out that Wards Cove, a Title VII case, was overturned by a provision of the 1991 Civil Rights Act amending Title VII, see 42 U.S.C. § 2000e-2(k)(1)(A)(i) (1994), the appellants argue that the pre-Wards Cove approach to Title VII disparate-impact cases should be followed by analogy in disparate-impact cases under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994). Prior to Wards Cove, the employer had the burden of proving that the challenged evaluation system or other business practice was a business necessity by showing it was related to job performance. See, e.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (stating that the employer has the “burden of proving that its tests are ‘job related’ ”); Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (“The touchstone is business necessity. If an employment practice ... cannot be shown to be related to job performance, the practice is prohibited.”). Lessening this burden, Wards Cove required the employer only to bear the burden of producing evidence of a business justification for the challenged employment practice. See Wards Cove, 490 U.S. at 659, 109 S.Ct. 2115 (stating that the challenged practice must significantly serve the employer’s legitimate employment goals but it is not required to be essential or indispensable). The 1991 Civil Rights Act overturned Wards Cove and again placed the burden on the employer “to demonstrate that the challenged practice is job related ... and consistent with business necessity.”[4] 42 U .S.C. § 2000e-2(k)(1)(A)(i). The appellants argue that, contrary to Wards Cove, Entergy should have had to bear the burden of proving a business necessity for using the ranking system rather than merely showing a business justification, which the appellants then had to disprove.
Entergy contends that the appellants did not properly preserve this claim of instructional error. We agree. “[T]o preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record.” Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir.1998) (quoting Dupre v. Fru-Con Eng’g, Inc., 112 F.3d 329, 334 (8th Cir.1997)); see also Fed.R.Civ.P. 51. The objection must be specific and “bring into focus the precise nature of the alleged error” so that the district court may have the opportunity to “correct errors and avoid the need for a new trial.” Westcott *1014 v. Crinklaw, 133 F.3d 658, 662 (8th Cir.1998) (internal quotation omitted). “Even tendering an alternative instruction without objecting to some specific error in the trial court’s charge or explaining why the proffered instruction more accurately states the law does not preserve the error for appeal.” Id.
After the District Court asked the appellants for their objections to the instructions, the following discussion occurred.
[ATTORNEY FOR PLAINTIFFS]: Instruction No. 10, we would object to the placing of the burden of proof on the plaintiffs to what we believe are still affirmative defenses of the defendants. Under the Age Discrimination Act the defendants have the burden of proving reasonable factors other than age as an affirmative defense and we would — they also have — we also think that they have the burden of proving why they did not use the alternative. We would like to proffer an alternative instruction under Albemarle Paper Company v. Moody.
THE COURT: I think we are down to Proffered Instruction J.
All right, I’m going to refuse the Plaintiffs’ Proffered Instruction J and overrule the objection to the Court’s Instruction No. 10. From my reading of the Eighth Circuit case law, which has not made a definitive ruling on who has the burden of proof on the issue of the reasonable alternative, my analysis of the law is that it would be unfair to place that burden on the defendants until ease law or statutory law has made it clear that there is a burden on the defendants to establish a reasonable alternative. And, therefore, the burden should be on the plaintiffs on this issue and that’s the way the instruction reads to the jury.
Trial Tr. at 73-74 (Apr. 24, 1997). From the objection and the District Court’s response, it is clear that all the appellants conveyed to the District Court was their objection as to the burden of proof on reasonable alternatives. The appellants argue that they objected to the burden of proof both as to reasonable alternatives and as to business necessity. They may have intended such an objection, but if so they utterly failed to state it distinctly so as to bring the nature of their objection into focus for the court. To preserve the alleged error for appeal, the appellants were required, during the jury instruction conference, to make a specific objection that distinctly stated the matter objected to and the grounds for the objection. The appellants’ objection did not use the terms “business necessity” or “business justification.” Even assuming the appellants’ objection is sufficiently general to encompass both reasonable alternatives and business necessity, a “general objection [is] insufficient to preserve the specific objections to the instruction” that appellants now argue. Dupre, 112 F.3d at 333. Nowhere in their objection did the appellants specify the grounds for the objection they now urge as a basis for reversal. After hearing the District Court’s response, the appellants easily could have made clear that they also were objecting to the burden of proof as to business necessity on the ground that the 1991 Civil Rights Act overturned Wards Cove’s business-justification analysis, but they failed to do so.
Because the appellants failed to make a timely and adequate objection regarding the business necessity issue, this Court reviews only for plain error. See Westcott, 133 F.3d at 662. The appellants must show that instructing in accordance with Wards Cove was an “error affecting substantial rights,” that the error was “plain,” and that the error seriously affected “the fairness, integrity or public reputation of judicial proceedings.” Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216, 1220 (8th Cir.1997) (internal quotations omitted); see also United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (“There must be an ‘error’ that is ‘plain’ and that ‘affect[s] substantial rights.’ ”). The error here, if there was one, was certainly not “plain.”
*1015 The 1991 Civil Rights Act expressly amended Title VII to overrule the Wards Cove analysis. The Act, however, does not prescribe a departure from Wards Cove for purposes of the ADEA, even though other ADEA provisions were amended by the Act. Neither the Supreme Court nor our Circuit has addressed the question of the status of Wards Cove in ADEA cases after the 1991 Civil Rights Act.[5] The District Court therefore could have chosen, as it did, to follow Wards Cove because the 1991 Civil Rights Act did not state that Wards Cove was overruled in the ADEA context. Alternatively, the District Court could have chosen not to apply Wards Cove by reasoning that the current statement of Title VII disparate-impact analysis, as reflected in the 1991 Civil Rights Act, should apply. As already mentioned, this issue is not settled in our Circuit. It also is a matter on which reasonable jurists could disagree. The error here, if any, cannot be regarded as plain error, and thus it affords the appellants no basis for reversal of the District Court.
As a second basis for reversal, the appellants argue that they should have been granted judgment as a matter of law on two grounds. First, the appellants argue the District Court erred by failing to rule that Entergy had not proven that use of the ranking system was a business necessity. This argument merely restates the appellants’ instructional argument regarding business necessity, which we already have addressed. Second, the appellants argue the District Court erred by failing to rule that Entergy had other selection devices, without a similar adverse impact on older employees, which would have served Entergy’s legitimate interests. The jury specifically found against the appellants on this matter, see Special Verdict Form No. 27 at 4, and we find no basis for reversing the jury’s verdict, which is one that on this record a reasonable jury could reach.
The appellants also argue the District Court erred by excluding certain evidence. We will not reverse a district court’s rulings on admissibility of evidence “absent a clear and prejudicial abuse of discretion.” Pittman v. Frazer, 129 F.3d 983, 989 (8th Cir.1997). Having reviewed the record, we find no abuse of discretion warranting reversal.
The judgment of the District Court is affirmed.

. Entergy is not appealing the five judgments entered against it.

. The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

. If the employer meets its burden, whether the standard is to prove business necessity or to show business justification, the burden then shifts to "the complaining party to show that other tests or selection devices, without a similarly undesirable [impact on older workers], would also serve the employer's legitimate [business] interest[s].” Albemarle, 422 U.S. at 425, 95 S.Ct. 2362; see also Wards Cove, 490 U.S. at 660, 109 S.Ct. 2115. This burden consistently has been placed on plaintiffs in Title VII cases and, indeed, the 1991 Civil Rights Act continues to place this burden on plaintiffs. See 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

. We note that the Supreme Court has "never decided whether a disparate impact theory of liability is available under the ADEA," Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), but it has suggested that the ADEA does not permit such actions. See id. ("Disparate treatment ... captures the essence of what Congress sought to prohibit in the ADEA.”); see id. at 611, 113 S.Ct. 1701 ("When the employer’s decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears.”). In a concurring opinion to Hazen, three justices note that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA.” Id. at 618, 113 S.Ct. 1701 (Kennedy, J., concurring). Our Circuit, however, has not expressly analyzed the application of the disparate impact theory to ADEA cases since Hazen Paper was decided. In Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1470 (8th Cir.1996), we concluded that disparate impact claims are cognizable under the ADEA by relying on three of our prior opinions, which we took to be the law of the Circuit. See also Lewis v. Aerospace Community Credit Union, 114 F.3d 745, 750 (8th Cir.1997) (citing Smith for proposition that our Circuit continues to recognize such claims), cert. denied, 523 U.S. 1062, 118 S.Ct. 1392, 140 L.Ed.2d 651 (1998). Two of the cases relied upon predated Hazen Paper and in the third case, in which our opinion post-dates Hazen Paper, the jury verdict was rendered more than one year prior to Hazen Paper and our opinion makes no mention of the Hazen Paper analysis. See Houghton v. Sipco, Inc., 828 F.Supp. 631, 634 (S.D.Iowa 1993), rev'd in part, 38 F.3d 953 (8th Cir.1994).